IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KIMBERLY T.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:19-cv-01013-HZ

OPINION & ORDER

Robyn M. Rebers
Robyn M. Rebers, LLC
P.O. Box 3530
Wilsonville, OR 97070

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Kimberly T. ("Plaintiff") brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on June 10, 2015, alleging an onset date of November 21, 2014. Tr. 16.[2] Plaintiff's date last insured ("DLI") is December 31, 2019. Tr. 18. Plaintiff's application was denied initially and on reconsideration. Tr. 16.

     On July 18, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). *Id.* On August 2, 2018, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on major depressive disorder, generalized anxiety disorder with panic attacks, post-traumatic stress disorder ("PTSD"), panic disorder, and status post stroke. Tr. 197. At the time of her alleged onset date, she was 50 years old. Tr. 26. She has a bachelor's degree and past relevant work experience as a substance abuse counselor. Tr. 26, 193.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

2 – OPINION & ORDER

# SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert,* 482 U.S. at 141.

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish the claimant can perform other

work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e)-(f). If the Commissioner meets their burden and proves the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined Plaintiff has the following severe impairments: "A depressive disorder, an anxiety disorder with panic attacks and post-traumatic stress disorder." *Id*. However, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19.

At step four, the ALJ concluded Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 404.1567 with the following limitations:

> She is limited to carrying out and maintaining concentration, persistence and pace for simple tasks. She is incapable of maintaining concentration, persistence and pace for more complex tasks. She is capable of appropriate supervisor contact. She is limited to superficial contact with coworkers and the public. She should not be required to engage in teamwork.

Tr. 21.

Because of these limitations, the ALJ concluded Plaintiff could not perform her past relevant work. Tr. 26. But at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as floor waxer, wall cleaner, and window cleaner. Tr. 27. Thus, the ALJ concluded Plaintiff is not disabled. *Id*.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the Commissioner erred by: (1) rejecting her subjective symptom testimony; and (2) discounting the medical opinion evidence.

**I.      Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons")

(quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

Here, the ALJ summarized Plaintiff's testimony as follows:

The claimant has alleged that her ability to work is limited by a major depressive disorder, a generalized anxiety disorder with panic attacks, PTSD, a panic disorder,

> and a history of stroke. She testified at the hearing that she has no physical issues. She stated she was unable to function at her most recent job as an evaluation counselor. She was unable to present her cases at staff meetings. She was having severe memory problems and she would be unable to remember her clients. She stated she was hypervigilant, hypersensitive, and paranoid. She stated she has experienced anxiety and panic symptoms since age 16 and she has never been the same since her stroke. She experiences panic attacks, which are triggered by dealing with "mean" and rude people. Her panic attacks occur four to six times a week lasting from five minutes to one hour. When panic attacks occur, she will lie down. If the panic attack is severe, she will take medication. She stated she had panic attacks for three days in anticipation of her disability hearing. The claimant testified that she is unable to deal with people, including a supervisor. However, she was unable to describe what kinds of problems she would have with supervisors.

Tr. 21-22 (record citation omitted).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with her daily activities and unsupported by the objective medical evidence and treatment records.

### A. Daily Activities

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to reject a claimant's symptom testimony: (1) the activities meet the threshold for transferable work skills, or (2) the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with

7 – OPINION & ORDER

certain daily activities, such as grocery shopping . . . does not in any way detract from h[er] credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

Here, the ALJ found Plaintiff's daily activities were "inconsistent with her allegations of debilitating mental health symptoms." Tr. 23. The ALJ cited Plaintiff's ability to care for her grandchild part time, care for her pets with help from her spouse, perform self-care activities and household chores, prepare meals, shop for groceries, socialize with family, pay bills, drive a car, go to the beach and concerts, and attend weekly church service and biannual spiritual retreats. Tr. 23.

The ALJ did not find, however, that Plaintiff's reported activities indicated transferrable work skills. The ALJ also failed to specify how Plaintiff's reported activities contradict her symptom testimony. Although a reviewing court may connect the dots if an ALJ's reasoning can "reasonably be discerned," *Molina*, 674 F.3d at 1121, here there are no dots to connect.[3] Merely listing Plaintiff's activities—the bulk of which the Ninth Circuit has held are so minimal that they do not undermine a claim of disability—and declaring they are inconsistent with the entirety of Plaintiff's "mental health symptoms" is neither clear nor convincing reasoning. *Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Accordingly, the ALJ erred.

---

[3] The Commissioner's explanation for why Plaintiff's activities are inconsistent with her specific symptom allegations, while plausible, are impermissible post-hoc rationalizations that cannot form the basis for affirming the ALJ. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (a district court may not affirm an ALJ's decision based on "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking") (citation omitted).

B.  **Objective Medical Evidence and Treatment History**

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount that testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). But this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

The ALJ concluded that Plaintiff's "allegations of disabling impairments are not fully supported by the treatment records and the objective evidence" because her "[m]ental status exams have been essentially normal *other than symptoms of depression and anxiety at times*." Tr. 22 (emphasis added). Given that Plaintiff claims she is disabled due to her depression and anxiety, the ALJ's finding is not a convincing reason to reject her testimony. Plaintiff having a "normal" mood and affect and being "alert and oriented to person, place, and time" do not conflict with Plaintiff's allegations of social anxiety and panic. Tr. 341, 606, 609; *Ghanim*, 763

F.3d at 1164 (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of depression and social anxiety"). Accordingly, the ALJ erred in relying on Plaintiff's mental status examinations to reject her testimony.

The ALJ also erred by rejecting Plaintiff's symptom testimony on the basis that she "reported obtaining good relief from PTSD symptoms with prescribed Prazosin" and her mental health counselor indicated her prescribed medications "had resulted in improvement in her functioning." Tr. 22. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Although Plaintiff reported that Prazosin was helpful, the record demonstrates that the medication did not completely alleviate her symptoms. *See*, *e.g.*, Tr. 764 (Plaintiff reporting in April 2018 that she "continues to have PTSD problems . . . unable to sleep, up all the time . . . hypersensitivity. Scares easily"). More problematic is the ALJ's mischaracterization of Nurse Practitioner Henschel's opinion, discussed *infra*, to find Plaintiff's prescribed medications "resulted in improvement in her functioning." Tr. 22 (citing Tr. 805). While the nurse practitioner detailed that Plaintiff's treatment resulted in "*some* improvement in functioning," he further noted that she still experienced issues with "explosive anger, high anxiety, difficulty concentrating and . . . hyperreactivity in public settings." Tr. 805. Accordingly, the ALJ's finding is not supported by substantial evidence.

Finally, the ALJ seemingly rejected Plaintiff's testimony because she "has acknowledged that her symptoms of depression and PTSD are exacerbated by situational stressors such as

family relationship issues, a custody battle over her granddaughter, loss of her father, and deployment of her son to Iraq." Tr. 22. An ALJ may reject a claimant's mental health symptoms that are situational and "unlikely to persist once . . . circumstances improve[.]" *Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016). The record reflects, however, that Plaintiff's depression and PTSD are longstanding impairments. This is not a case in which Plaintiff's "situations," as opposed to her psychological impairments, are the cause of her limitations. Moreover, "one weak reason is insufficient to meet the 'specific, clear and convincing' standard on this record." *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (citations omitted). The Court therefore concludes that the ALJ's rejection of Plaintiff's symptom testimony was erroneous.

## II. Medical Opinion Evidence

Plaintiff argues the ALJ failed to provide legally sufficient reasons for discounting the opinions of Jacob Helton, Psy.D. ("Dr. Helton"), Donald Henschel, RN, PMHNP ("NP Henschel"), and Martin Peters, D.O. ("Dr. Peters").

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632; 20 C.F.R. § 416.927. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (same); 20 C.F.R. § 416.927(c). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the

length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 416.927(c)(2)-(6).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ford v. Saul*, 950 F.3d 1141, 1154–55 (9th Cir. 2020). To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Bray*, 554 F.3d at 1228.

Under the applicable regulations, a nurse practitioner is not an acceptable medical source. 20 C.F.R. § 404.1513(a). Instead, this type of practitioner is an "other" medical source whose opinion is relevant to determining the severity of the claimant's impairments and how they affect the claimant's ability to function. 20 C.F.R. § 404.1514(d). An ALJ may not reject the competent testimony of other medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of other medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

### A. Dr. Helton

Dr. Helton issued a medical opinion in August 2016. Tr. 449-52. He detailed that he began treating Plaintiff in December 2015, and that she had attended 25 individual therapy

sessions with him. Tr. 449. Dr. Helton noted that Plaintiff's diagnoses included chronic PTSD and recurrent, moderate major depressive disorder. *Id.* He opined that Plaintiff was "significantly limited in all the listed aspects of work-related mental activities, including no useful ability to complete a normal workday and workweek, maintain regular attendance, sustain an ordinary routine, perform at a consistent pace, respond appropriately to change in a routine work setting, and deal with normal work stress." Tr. 24 (citing Tr. 451). Dr. Helton further opined that Plaintiff would likely be absent from work more than two days per month. Tr. 452.

The ALJ provided two reasons for giving "limited weight" to Dr. Helton's medical opinion. Tr. 24. Neither was specific or legitimate. First, the ALJ discounted Dr. Helton's opinion because "his treatment records primarily discuss [Plaintiff]'s issues with attempting to gain legal custody of her grandchild, including anger with family members and the legal system." *Id.* The ALJ did not explain why Plaintiff's treatment undermines Dr. Helton's opinion. "While the treatment notes documented situational stressors, the notes do not show [P]laintiff has no mental problems, and is simply stressed by her situation." *Tina S. v. Comm'r of Soc. Sec.*, No. C19-547 BAT, 2019 WL 6168027, at *2 (W.D. Wash. Nov. 20, 2019). Instead, Dr. Helton's notes demonstrate that Plaintiff "has preexisting mental health problems such as depression, anxiety and PTSD; that stressors do not make these conditions better; and that [P]laintiff struggles with these mental conditions whether there are stressors in her life of not." *Id.*

Second, the ALJ found Dr. Helton's opinion was "inconsistent with treatment records from early 2016 indicating that [Plaintiff] was discuss[ing] relocating to California and plans to apply for jobs." Tr. 24 (citing Tr. 560, 573). The ALJ, however, failed to explain how Plaintiff "potentially relocating to CA" and Dr. Helton discussing "the pros and cons of relocating" and "finding new employment" with Plaintiff, undercut Dr. Helton's opined limitations. Although a

claimant's work activities can undermine her claim of disability, *Bray*, 554 F.3d at 1227, there is no evidence that Plaintiff actually sought out new employment. Accordingly, Plaintiff discussing the idea of relocating to California and thinking about applying for a job were not specific and legitimate reasons for rejecting Dr. Helton's opinion.

### B. NP Henschel and Dr. Peters

In June 2018, NP Henschel provided an opinion in which he indicated that Plaintiff suffered with emotional regulation problems, explosive anger, high anxiety, difficulty concentrating, and hyperreactivity in public settings. Tr. 805. He assessed Plaintiff was seriously limited or unable to meet competitive standards in numerous areas of functioning, including the ability to maintain regular attendance and be punctual, complete a normal workday and workweek without psychological interruptions, respond appropriately to instructions and criticism from a supervisor, interact appropriately with coworkers and the general public, and tolerating normal work stress and changes in routine. Tr. 807. NP Henschel opined that Plaintiff would not be able to adequately function in the workplace due to her angry outbursts and difficulty handling stress, hearing criticism, or following instructions. *Id.* In July 2018, Dr. Peters signed a form stating that he concurred with NP Henschel's opinion. Tr. 813.

The ALJ gave NP Henschel's opinion "limited weight" because he had treated Plaintiff for eight months and seen her every one to two months; his report was based on Plaintiff's subjective complaints; he reported that he had completed the form in cooperation with Plaintiff; he acknowledged that he had not assessed Plaintiff's workplace performance; and his opinion was inconsistent with his treatment records. Tr. 24-25. In addition, the ALJ afforded Dr. Peters' opinion "little weight" because he did not provide supporting rationale for his opinion and his treatment records demonstrated essentially normal mental status exams. Tr. 25.

After the hearing, NP Henschel provided a letter which clarified that only question number eight of his opinion was completed "in cooperation" with Plaintiff and that his assessment was consistent with his clinical observations of Plaintiff as well as her reports of functioning in other settings. Tr. 10. Dr. Peters also provided a post-hearing narrative addressing the ALJ's reasoning. Tr. 11. He noted that he reviews Plaintiff's mental health records as they are sent to him and manages her medication for compliance and side effects. *Id.* Dr Peters explained that the neurological exams cited by the ALJ should not be confused with mental status exams because they are designed to assess for focal neurological deficits that might show a repeat stroke or aneurysm condition. *Id.*

Plaintiff argues the ALJ failed to give legally sufficient reasons for rejecting NP Henschel's and Dr. Peters' opinions. Plaintiff further argues that the medical providers' post-hearing submissions contradict the reasons the ALJ gave for rejecting their opinions, such that the ALJ's decision is no longer supported by substantial evidence. Because this case is being remanded for further proceedings, *infra*, the Court declines to resolve Plaintiff's assertions of error relating to NP Henschel and Dr. Peters. On remand, the ALJ must reevaluate the opinions in light of the post-hearing clarifications.

The Court notes, however, that the ALJ's rejection of NP Henschel's opinion on the basis that he had a purportedly limited treating relationship with Plaintiff seems inconsistent with the ALJ's decision to give "significant weight" to the opinions of Drs. Ju and Boyd, who have never seen Plaintiff, much less treated her. In addition, rejecting NP Henschel's opinion because he partially relied on Plaintiff's subjective reporting is also problematic for several reasons. First, the ALJ failed to give legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony. Thus, there is no justification for the ALJ to find NP Henschel improperly relied on

Plaintiff's subjective reporting. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Second, an ALJ should not reject an opinion as overly reliant on a claimant's complaints where the medical source "does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). Finally, a psychological opinion "should not be rejected simply because of the relative imprecision of the psychiatric methodology." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective . . . . [b]ut such is the nature of psychiatry.") (citations omitted).[4]

## III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *Treichler*, 775 F.3d at 1100. First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

---

[4] The Court further notes that "[t]o the extent nurse practitioner [Henschel] was working closely with, and under the supervision of, Dr.[Peters], h[is] opinion is to be considered that of an 'acceptable medical source.'" *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (quoting *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

Plaintiff asks the Court to credit her testimony and medical opinion evidence as true and remand this case for immediate payment of benefits. This case, however, is not one with "rare circumstances" justifying that type of remand. Further administrative proceedings are necessary to reevaluate NP Henschel's and Dr. Peters' opinion in light of their post-hearing clarifications. The Court therefore finds the ordinary remand rule is the proper course in this case.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

DATED:\_\_\_\_June 22, 2021_____.

*Marco Hernandez*

MARCO A. HERNÁNDEZ
United States District Judge